CLOPTON v. JOLLEY & TERRY.
(No. 6025.)

(Court of Civil Appeals of Texas. San Antonio.
May 1, 1918. Rehearing Denied
May 29, 1918.)

1. ATTACHMENT ☞308(4) — CLAIM BY THIRD PERSON—EVIDENCE OF OWNERSHIP.

In proceedings to determine right to attached property, evidence *held* to sustain verdict that bill of sale to claimant, who held a mortgage on the property, was not intended to convey the property, and that claimant was not the owner.

2. ATTACHMENT ☞308(4) — CLAIM BY THIRD PERSON—POSSESSION—EVIDENCE.

Evidence *held* to show that at time of and prior to the levy of attachment, claimant, who replevined the property, was in actual possession and control by defendant in attachment as his agent.

3. TRIAL ☞139(1) — PEREMPTORY INSTRUCTIONS—WHEN PROPER.

Where there was sufficient evidence to present a jury question, peremptory instructions were properly refused.

Appeal from District Court, Caldwell County; Frank S. Roberts, Judge.

Attachment suit by Jolley & Terry against J. K. Miller, wherein A. M. Clopton filed a claimant's oath and bond. There was a judgment against Clopton and his sureties, and he appeals. Reversed and remanded.

Page & Jones, of Bastrop, and S. R. Graves and O. Ellis, Jr., both of Lockhart, for appellant. Nye H. Clark, E. B. Coopwood, and J. B. Hatchitt, all of Lockhart, for appellee.

SWEARINGEN, J. We adopt the statement of this case made by Chief Justice Key, reported in 181 S. W. 562:

"Jolley & Terry brought suit in the county court upon open account against one J. K.

---

Miller, and caused an attachment to be issued and levied upon two mules; whereupon A. M. Clopton filed with the officer who executed the writ of attachment a claimant's oath and bond, and thereby obtained possession of the animals referred to. The sheriff, as required by law, returned the oath and bond to the district court, where, in a trial of the rights of property, judgment was rendered against Clopton and the sureties upon his replevy bond, and he has appealed. In their pleading making up the issues, appellees alleged that at the time of filing his claimant's oath and bond appellant had no right, title or interest to the property, nor any right to the possession thereof. In his answer appellant denied those allegations, and alleged that at the time referred to he had title to the property, and had possession and the right of possession thereof. His answer also contained other averments specifically pleading some, if not all, of the facts hereinafter referred to. Upon that issue it was shown that prior to the bringing of appellees' suit against J. K. Miller appellant had acquired from the Merchants' & Farmers' State Bank of Elgin a valid mortgage executed by J. K. Miller upon the property here in controversy, and that Miller had also executed and delivered to appellant an instrument of writing in the form of a bill of sale, conveying the property to appellant, and that appellees had notice of the existence of such mortgage and bill of sale before they sued out their writ of attachment."

In answer to special issues the jury found that Miller was in actual physical possession of the property involved, which was admitted, and also found that this possession was for Miller himself in his own right, and not as agent for Clopton. The jury also found that the instrument in bill of sale form did not pass the title to the property because of the intent of the vendor and vendee.

The first assignment complains that the court erred in overruling appellant's motion to set aside the verdict of the jury upon the two facts above mentioned. The first proposition under this assignment is:

"When the answer of the jury to a special issue propounded to them for the purpose of ascertaining whether a bill of sale absolute on its face was intended by the parties to pass title to the property therein described, or was intended as a mortgage only, is against the evidence, the trial court should, when requested, set aside the special verdict, and grant a new trial."

The issue whether the instrument was in fact a bill of sale or a mortgage could have been decided either way by the jury, and its verdict would have been sustained by the evidence. That it was an actual sale is supported by the instrument itself and by the testimony of Miller, the maker, and Clopton, the beneficiary, and also by the testimony of Mr. Keeble, the president of the bank, who had the instrument prepared to carry out the agreement with him, as representative of the bank, for Clopton to pay the $2,070 due the bank by Miller, and is further supported by the circumstances that the property was already mortgaged to the bank, and an additional mortgage was not necessary, but a bill of sale was, and the fact that no claim has ever been made since by Clopton of the existence of any indebtedness against Miller, and the fact that Clopton still holds the property and Miller makes no claim of ownership.

[1] On the other hand, there is evidence that after the 29th of June, 1914, the date of the instrument, in the form of a bill of sale, Miller continued to use the property as his own, bought two collars that could have been used on the teams, paid Lovejoy, a laborer, working the teams for him, and more persuasive the statement made by Clopton in a letter dated September 3, 1914, that the debts against Miller were still in force, and that the net profits from the use of the property would be credited to the account of Miller. We feel ourselves constrained to abide by the verdict of the jury that the instrument was not intended to pass the title to the property.

The second proposition under the first assignment is:

"When the answer of the jury to a material special issue, propounded to them for the purpose of ascertaining whether or not the claimant of personal property in a trial of the right of property was in legal possession of such property, through his agent or foreman, at the time of the levy of an attachment thereon, is not supported by the evidence, the trial court should, when requested by proper motion, set aside the special verdict and grant a new trial."

[2] The only evidence that Miller had possession of the property for himself was the undisputed fact that he had physical possession of it on September 11, 1914, when the sheriff took the property by virtue of the attachment, and the further circumstance that Miller may have held possession for himself after June 29, 1914, until September 3, 1914. Both Miller and Clopton testified that after June 29, 1914, Miller's possession of the property was the possession of an agent for the principal, Clopton; but the facts testified to that after June 29th Miller bought horse collars and paid the wages of the teamster, Lovejoy, as well as the contents of the letter of September 3, 1914, written by Clopton to Miller, all support the inference that Miller and Clopton were mistaken and sustain the conclusion that from June 29, until September 3, 1914, Miller held possession of the property for himself, and not as agent for Clopton. However, the overwhelming evidence shows that on and after September 3, 1914, Clopton actually took possession of the property, and employed Miller as foreman to care for and manage the property. The last date upon which Miller is shown to have purchased anything for maintenance of the property was in July, 1914. During the latter part of August, 1914, Clopton paid the teamster, Lovejoy, appellees' witness, for his services in handling the teams, and the letter of September 3d, introduced and relied upon by appellees, unmistakably shows that on that date Clopton took over the possession of the property, and paid all expenses of maintenance as well as the wages of foreman to Miller from then on. And, further, the evidence shows that this actual possession ac-

quired on September 3, 1914, continued uninterruptedly up to the time of the trial. Miller, soon after September 3d, quit as foreman, and Clopton employed another foreman. On and after September 3, 1914, the great preponderance of the evidence shows that Clopton was in actual control of the property, and Miller's possession after that date was merely as a paid foreman for Clopton. The attachment was levied after September 3d, namely, on September 11, 1914. We fail to find a single circumstance to refute the fact that after September 3, 1914, and on September 11th, Clopton was in control of the property through his agent, Miller.

Appellees make no answer in their brief to appellant's second proposition. We therefore hold that the second proposition is correct, and sustain the first assignment of error.

[3] The second and third assignments complain of the refusal of peremptory instructions to find for appellant. There was sufficient evidence to require submission of the case to the jury, for which reason the court properly refused the peremptory instructions. We overrule the second and third assignments.

The fourth assignment is too general to require consideration.

For the reasons expressed in our consideration of the second proposition under appellant's first assignment, the judgment of the trial court is reversed, and the cause remanded.